UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY MONTGOMERY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:19-cv-00747 |
| | ) |
| KENDRA WHIDBEE, ET AL., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Gary Montgomery, a pretrial detainee in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, has filed a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an amended application to proceed in forma pauperis (IFP). (Doc. No. 7) He has also filed a motion to appoint counsel. (Doc. No. 5)

**I. Application to Proceed IFP**

Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 7) will be granted.

**II. Initial Review of the Complaint**

**A. PLRA Screening Standard**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, 28 U.S.C. § 1915A

provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and must take all well-pleaded factual allegations as true. Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Carl v. Muskegon Cty., 763 F.3d 592, 595 (6th Cir. 2014).

**C. Allegations and Claims**

Plaintiff alleges that he was unable to obtain an absentee ballot to cast a vote in the 2016 presidential election because of delays and a lack of helpfulness from Program Manager Sheree Amos and his case manager at the time, Ms. Miller. (Doc. No. 1 at 10) Around July 1, 2016, Amos told Plaintiff that he could "have whatever [he] need[ed]" to submit a ballot application after completing a program in which he was enrolled. (Id.) Upon finishing the program at the end of July 2016 and being moved to a new housing pod, Plaintiff requested Miller's assistance in obtaining an absentee ballot, and Miller responded, "It's not my job to obtain ballots." (Id.)

On July 2, 2018, after again being moved to a different housing pod, Plaintiff requested assistance from case manager Kendra Whidbee in securing an absentee ballot and bankruptcy forms. (Id.) And on August 7, 2018, Plaintiff made another request for this assistance from Ms. Jackson, who was filling in for Whidbee that day. (Id. at 10–11) On September 18, 2018, after Plaintiff filed numerous complaints concerning Whidbee's lack of responsiveness and "had also brought up receiving a letter from the [Election] [C]ommission advising [he] missed the deadline," Plaintiff "went into case manager Whidbee's office to conduct a phone call" with his sister. (Id. at

3

11–12) During that call, Plaintiff told his sister that he believed the jail staff was intentionally trying to keep him from voting. (Id. at 12) Plaintiff describes the ensuing events as follows:

> Mrs. Whidbee was being nosy and interrupted [the] phone call and started yelling at the Plaintiff. Plaintiff ignored Whidbee's outburst and calmly concluded his phone call. Once completed Plaintiff then calmly exercised his right to free speech telling Whidbee she should mind her own business. Plaintiff did not raise his voice or use foul language, then calmly walked out of the room.

(Id. at 12–13) Plaintiff was placed in a holding cell shortly after this incident in Whidbee's office, and, within an hour, was transferred to a different housing pod. (Id. at 13)

Whidbee filed a disciplinary report charging Plaintiff with being disruptive and threatening during the September 18 incident in her office. (Id.) He was convicted on this charge without being permitted to call Whidbee to testify, and his appeal was heard by Whidbee's supervisor, G. Earl. (Id. at 13–14) The disciplinary conviction was sustained, and Plaintiff was punished for the infraction. (Id. at 14)

Meanwhile, on October 8, 2018,[1] in the new housing pod, Plaintiff's new case manager Kinya Jamison provided him an application to register to vote and to request an absentee ballot. (Id. at 11) The application was marked at the top with a submission deadline of October 16, 2018. (Id.) Plaintiff promptly completed the application and returned it to Jamison, who assured Plaintiff that she would have it notarized by Earl, the Program Director. (Id.) The notarized application was not returned to Plaintiff until October 12, when he immediately placed it in the prison mail. (Id. at 11–12) Despite giving the application to prison authorities for mailing ahead of the submission deadline, Plaintiff subsequently "received a letter from the [Election] Commission advising the application was late filed." (Id. at 12) As a result, Plaintiff was unable to vote in the 2018 mid-

---

[1] This date is recited in the complaint as "August 8, 2018." (Doc. No. 1 at 11.) Given the surrounding sequence of events, however, the Court presumes that Plaintiff erroneously printed "August" when he intended "October."

term elections. (Id. at 12) Plaintiff reported this untimely processing and his inability to vote to Facility Administrator Harold Taylor, whose response was to blame Plaintiff. (Id.)

Plaintiff claims that he was denied his right to vote "in violation of [the] Equal Protection Clause of the Fourteenth Amendment to the Constitution"; that he was retaliated against and defamed by Whidbee when she falsely charged him with threatening behavior and had him moved to a different housing pod; and, that he was deprived of due process during the disciplinary hearing and appeal. (Id. at 14–16) He further claims that all Defendants acted negligently under state law. (Id.) He seeks declaratory and injunctive relief, as well as compensatory and punitive damages against the Davidson County Sheriff's Office and John Does 1–5, Defendants Whidbee, Jamison, Miller, Amos, and Jackson in their individual capacities, and Defendants Earl and Taylor in their individual and official capacities.

**D. Analysis**

1. Right to Vote

"'[V]oting is of the most fundamental significance under our constitutional structure.'" Mays v. LaRose, ---F.3d---, 2020 WL 1023039, at *3 (6th Cir. Mar. 3, 2020) (quoting Ill. Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979)). The right to vote may be "subject to the imposition of state standards," Lassiter v. Northampton Cty. Bd. of Elections, 360 U.S. 45, 51(1959), but those standards cannot unduly burden a particular group of voters, such as those who are incarcerated. Mays, 2020 WL 1023039, at *3. For instance, although "there is no constitutional right to an absentee ballot," id. at *10 (citing McDonald v. Bd. of Election Comm'rs, 394 U.S. 802, 807–09 (1969)), the State cannot impose an "absolute bar to voting" upon pretrial detainees otherwise entitled to vote without running afoul of the Equal Protection Clause of the Fourteenth Amendment. O'Brien v. Skinner, 414 U.S. 524, 529–30 (1974) (distinguishing McDonald, 394

U.S. at 808 n.7, 809, which affirmed the denial of relief to allegedly disenfranchised detainees because "there [was] nothing in the record to show that appellants [were] in fact absolutely prohibited from voting by the State"). But where "the possibility [exists] that the State might furnish some other alternative means of voting" than the one sought by the detainee, no constitutional violation is established. See id. at 529.

In the case of a detainee alleging that jail officials—rather than the operation of state law—prevented him from voting, it is clear that negligent failure to act does not rise to the level of a constitutional violation. See Whitaker v. Gusman, No. CIV.A. 09-3710, 2010 WL 3528618, at *3 (E.D. La. Aug. 10, 2010), report and recommendation adopted, No. CIV.A. 09-3710, 2010 WL 3528615 (E.D. La. Sept. 2, 2010); Price v. Ky. Dep't of Corr. Comm'r, No. 4:17-CV-P152-JHM, 2018 WL 1570812, at *3 (W.D. Ky. Mar. 30, 2018) (explaining that even "[a]llegations of gross negligence do not rise to the level of a . . . constitutional tort under Section 1983") (quoting Gazette v. City of Pontiac, 41 F.3d 1061, 1066 (6th Cir. 1994)). Rather, a detainee claiming disenfranchisement by jail officials must allege that those officials were deliberately indifferent to the detainee's loss of his only available means of exercising his voting rights. Whitaker, 2010 WL 3528618, at *3 (citing Lewis v. San Mateo County, No. C 96-4168 FMS, 1996 WL 708594, at *1 (N.D. Cal. Dec. 5, 1996)); see also Henderson v. Sheahan, 134 F.3d 374 (Table), No. 95-3279, 1997 WL 819832, at *2 (7th Cir. Dec. 29, 1997) (requiring detainee to allege that policymaking official "made 'a deliberate choice' to deny the inmates' right to vote, that is, he knew of and condoned the constitutional deprivation or acted with deliberate indifference to it"). With these standards in mind, the Court will examine whether the complaint states a voting rights claim against each individual Defendant. See generally Richko v. Wayne Cty., Mich., 819 F.3d 907,

915–16 (6th Cir. 2016) (finding that deliberate indifference claims require analysis of whether "each officer individually" knew of and disregarded a substantial risk of serious harm).

a. Amos and Miller

Plaintiff first alleges that Defendants Amos and Miller failed to assist him in obtaining an absentee ballot in July 2016, despite Amos's assurances that he could have whatever he needed after he finished the program in which he was enrolled. (Doc. No. 1 at 10) Regardless of whether these allegations might otherwise support a colorable claim at this initial stage, any such claim would be barred by the applicable statute of limitations. The statute of limitations for Section 1983 claims is the one-year period under Tenn. Code Ann. § 28-3-104(a)(1)(B). Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005); Berndt v. Tennessee, 796 F.2d 879, 883 (6th Cir. 1986). Plaintiff filed this action in August 2019. Any claim arising from the alleged failure to deliver registration and ballot forms in 2016 accrued years prior to the filing of the complaint and is therefore subject to dismissal as untimely.

b. Whidbee and Jackson

Plaintiff next alleges that he requested assistance in securing the proper forms in July and August 2018 to vote in the mid-term election, but Defendants Whidbee and Jackson failed to respond to his requests in any way. As frustrating as this unresponsiveness may have been to Plaintiff, and "even though the right to vote is well-established" and cannot be entirely removed from an otherwise eligible detainee, the Court is not aware of any authority imposing a constitutional obligation on county jail officials to provide forms "which the detainee may acquire for himself." Long v. Pierce, No. 2:14-CV-00244-LJM-MJD, 2016 WL 912685, at *5 (S.D. Ind. Mar. 10, 2016) (finding no Supreme Court or circuit court cases imposing obligation to provide means for detainee to vote other than allowing detainee himself to acquire and mail an absentee

7

ballot); see generally Jones v. Smith, 266 F.3d 399, 400 (6th Cir. 2001) (per curiam) (affirming dismissal for failure to exhaust where inmate argued "no grievance had been filed because his counselor did not give him a grievance form," but did "not allege that there was no other source for obtaining a grievance form or that he made any other attempt to obtain a form").

The requirement that detainees must generally help themselves to available resources finds support in the recent decision of the Sixth Circuit in Mays v. LaRose. There an Ohio detainee arrested just after the State's absentee ballot deadline had passed "asked jail officials if the State would allow him to vote [from jail,] but he never received an answer." 2020 WL 1023039, at *1–3. The Sixth Circuit rejected the detainee's claim that Ohio's deadline for requesting an absentee ballot was discriminatory as applied to jail-confined voters, noting that "[a]ny elector may request an absentee ballot, so long as they deliver that request to the Board of Elections [on time]." Id. at *10. The Sixth Circuit also found that the State's refusal to accept late absentee ballot requests from jail-confined electors did not violate equal protection—even though the State accommodated late requests from hospital-confined electors—because jailed electors, despite their incarceration, were not unduly burdened by being forced to comply with the deadline. Id. at *3–10 & n.4 (noting that "State action making it easier for some electors to vote—such as providing them an extended deadline to register for absentee ballots—doesn't make it harder to vote for electors that don't get the same benefit").

Here, Plaintiff does not allege that Defendants Whidbee and Jackson actively misled him about the voting process, applicable deadlines, or their ability to provide the forms he requested. Cf. Long, 2016 WL 912685, at *5 (allowing claim to proceed against official who told detainee "he would figure out how" to get him a ballot application, "but never did"). He merely alleges that

8

they failed to respond to his requests for assistance in acquiring an absentee ballot. Tennessee law establishes the process by which a voter may obtain an absentee ballot, as follows:

> (1) A voter who desires to vote absentee shall request an absentee ballot not more than ninety (90) and not later than seven (7) days before the election; . . .
>
> (3) A voter may also request from the county election commission office an application to vote absentee . . . by mail[2] . . . The request shall be in writing over the voter's signature. The request serves as an application for a ballot if the request contains the following information:
> > (A) The name of the registered voter;
> > (B) The address of the voter's residence;
> > (C) The voter's date of birth;
> > (D) The voter's social security number;
> > (E) The address to mail the ballot outside the county, if applicable;
> > (F) The election the voter wishes to participate in; and
> > (G) The reason the voter wishes to vote absentee.

Tenn. Code Ann. § 2-6-202(a)(1), (a)(3).

Ideally, a jail case manager would respond to a request for voting assistance by either procuring and delivering appropriate forms or directing the detainee to the appropriate office from which to request the forms. The Court is sympathetic to Plaintiff's belief that his jail case managers were a proper resource to provide any forms he desired to obtain. But because the failure of Whidbee and Jackson to affirmatively assist Plaintiff in this way did not prevent Plaintiff from obtaining an absentee ballot application as described in Section 2-6-202(a)—by contacting the Election Commission in the same way as any other elector might—he cannot plausibly claim that the inaction of these Defendants deprived him of his only means of voting in the 2018 mid-term elections. See Elder v. Cook Cty. Dep't of Corr., 2016 IL App (1st) 153428-U, 2016 WL 5846688, at *8 (Ill. Ct. App. Sept. 30, 2016) (affirming dismissal of voting rights claim against individual jail officials who allegedly refused detainee's requests for absentee ballot, citing detainee's failure

---

[2] The Court takes judicial notice of the mailing address for the Davidson County Election Commission, P.O. Box 650, Nashville, Tennessee, 37202. https://www.nashville.gov/Election-Commission.aspx (last visited Mar. 17, 2020).

to allege that he requested an absentee ballot under Illinois Election Code by mail to the county clerk or Board of Elections, "or that any defendant prevented him from doing so"; "Plaintiff's complaint can only be construed as alleging that he requested an absentee ballot directly from defendants. If that is true, and if defendants did not provide him one, it does not establish a constitutional violation."); cf. O'Brien, 414 U.S. at 530 (finding an equal protection violation where pretrial detainees were "simply not allowed to use the absentee ballot and are denied any alternative means of casting their vote"). This claim against Whidbee and Jackson will be dismissed.

### c. Jamison, Earl, and Taylor

Next, Plaintiff alleges that, after his September 18, 2018 transfer to a different housing pod, he advised his new case manager, Kinya Jamison, that he was moved "because I expressed my personal opinion while making a call that people are intentionally not providing me with an absentee ballot so I can vote." (Doc. No. 1 at 11) Defendant Jamison eventually gave Plaintiff a voter registration application and request for absentee ballot form, but not until October 8, 2018. (Id.) That application was marked at the top with a submission deadline of October 16, 2018. (Id.) Plaintiff "quickly completed the form in a few minutes" and gave it to Jamison, advising her that the application would need to be notarized before being mailed. (Id.) Jamison assured Plaintiff that she would secure notarization from Defendant Earl, and did in fact do so. (Id.) However, the notarized form was not returned to Plaintiff until four days later, on October 12. (Id. at 11–12) Although Plaintiff deposited the application in the prison mail system on October 12, the Election Commission notified Plaintiff two weeks later that his application had been filed too late to allow his vote by absentee ballot in the 2018 mid-term elections. (Id. at 12)

Liberally construing the complaint in Plaintiff's favor, the Court finds that Plaintiff has stated a colorable claim that Defendants Jamison and Earl were deliberately indifferent to Plaintiff's loss of his only means of voting. Plaintiff does not specify the date he told Jamison of his past difficulty in obtaining election forms, nor does he allege that Jamison offered to provide such forms before giving him the forms on October 8. For purposes of initial review, however, it is reasonable to infer that Plaintiff requested election forms from Jamison on or around September 18, the date of his transfer, and was given reason to believe that Jamison would provide them; that Jamison and Earl were aware of the October 16 deadline for submitting the forms; and that these Defendants disregarded the need to expeditiously deliver the forms to Plaintiff and provide notarization services, resulting in the constructive denial of his right to vote. Accordingly, this claim will proceed for further development.

However, the Court will dismiss Plaintiff's individual-capacity claim against Defendant Harold Taylor, the "CDM Facility Administrator" who allegedly did nothing "to resolve the issue" after Plaintiff reported the untimely delivery and notarization of his election forms. (Doc. No. 1 at 12) A supervisor's failure to remedy the allegedly unconstitutional behavior of a subordinate does not state a claim under Section 1983, which "must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citation and internal quotation marks omitted). Taylor is not alleged to have acted in any way that violated Plaintiff's constitutional rights, and so cannot be personally liable under Section 1983. Moreover, Plaintiff's allegation that Taylor "negligently supervised his staff and violated Plaintiff's due process through respondeat superior and by not following up with grievances over more than a three year period" (Doc. No. 1 at 15) is entirely conclusory and fails to support a claim under federal or state law. See Iqbal, 556 U.S. at 678 (noting that Rule 8 does not require detailed

factual allegations, but a complaint must offer more than labels, conclusions, or "naked assertions devoid of further factual enhancement") (citation and internal quotation marks omitted).

The Court will also dismiss Plaintiff's official-capacity claims against Defendants Earl and Taylor. (Doc. No. 1 at 12) Official-capacity claims "are, in all respects other than name, to be treated as a suit against the entity" that employs the defendant. Foster v. Michigan, 573 F. App'x 377, 390 (6th Cir. 2014) (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Whether Earl and Taylor are employed by Davidson County or by a corporate entity under contract with the County, Plaintiff must allege that the entity's official policies or customs resulted in injury to him. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Vick v. Core Civic, 329 F. Supp. 3d 426, 445 (M.D. Tenn. 2018) (quoting O'Brien v. Mich. Dep't of Corr., 592 F. App'x 338, 341 (6th Cir. 2014)). The complaint contains no allegation that any policy or custom was the "moving force" behind Plaintiff's injury. City of Canton, 489 U.S. at 388. Dismissal of these official-capacity claims is therefore warranted.

Finally, Plaintiff's claims are not properly asserted against the Davidson County Sheriff's Office or John Does 1–5. "[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit," as they are not "persons" within the meaning of that statute. Mathes v. Metro. Gov't of Nashville & Davidson Cty., No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases). Even if the Court were to liberally construe the claims against the Sheriff's Office as against Davidson County itself, Plaintiff fails to state a claim for the reasons stated in the previous paragraph. The Davidson County Sheriff's Office must therefore be dismissed as a party. Moreover, Plaintiff cannot maintain this suit against the five John Does he names as Defendants (Doc. No. 1 at 1, 9) because they are not alleged anywhere else in the complaint to have acted to

12

cause Plaintiff harm. See Green v. Correct Care Sols., No. 3:14-cv-01070, 2014 WL 1806997, at *4 (M.D. Tenn. May 7, 2014) (citing cases) ("It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal as to that defendant, even under the liberal construction afforded to pro se complaints.").

### 2. Retaliation

Plaintiff also asserts retaliation claims against Defendant Whidbee. To state a claim of First Amendment retaliation, Plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" Hill v. Lappin, 630 F.3d 468, 472 (6th Cir. 2010) (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

Plaintiff claims that Defendant Whidbee retaliated against him for exercising his free speech rights at the conclusion of the September 18, 2018 incident in Whidbee's office, by filing false disciplinary charges against him. To recap, that incident, Plaintiff ignored what Whidbee was yelling at him, told his sister that he believed the jail staff was intentionally trying to keep him from voting, "calmly concluded his phone call," and told Whidbee "she should mind her own business." (Doc. No. 1 at 12–13) This claim fails because Plaintiff does not allege sufficient facts to satisfy the first prong of the retaliation test.

Plaintiff's statements to Whidbee and his sister are not protected by the First Amendment. Assuming that Whidbee overheard Plaintiff's statement to his sister, that statement was only protected speech if it "ma[de] clear his intention to resort to official channels to seek a remedy" for his inability to vote. See Horn v. Hunt, No. 2:15-cv-220, 2015 WL 5873290, at *5–6 (S.D.

13

Ohio Oct. 8, 2015) (quoting Carter v. Dolce, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009)) ("[C]ourts have recognized that an inmate's exercise of First Amendment rights is not limited solely to filing grievances or accessing the courts," but includes clearly expressed intent or threat to pursue a formal remedy). No such intention is discernible from Plaintiff's comments to his sister.

Furthermore, as to Plaintiff's statement to Whidbee, while he "retain[s], in a general sense, a right to criticize prison officials," "[h]e must also establish that he exercised that right in a manner consistent with his status as a prisoner" if his conduct is to be protected. Freeman v. Texas Dep't of Criminal Justice, 369 F.3d 854, 864 (5th Cir. 2004). Plaintiff did not exercise his right in this manner by ignoring Whidbee's yelling and telling her to mind her own business in her own office. See id. ("Prison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment.") (citing Goff v. Dailey, 991 F.2d 1437, 1439 (8th Cir. 1993)). The Court thus finds that Plaintiff has failed to state a colorable claim of First Amendment retaliation for his conduct on September 18, 2018.

Plaintiff also fails to state a retaliation claim based on his transfer to a different housing pod following the September 18, 2018 incident. Plaintiff alleges that his transfer to "Housing Pod A2" in the aftermath of the incident in Whidbee's office was "due to numerous complaints about Mrs. Whidbee not providing documents and opportunities to go to the law library," as well as because he "brought up receiving a letter from the voting commission advising [he] missed the deadline." (Doc. No. 1 at 11, 13.) Although the filing of complaints and grievances against jail officials is protected conduct under the First Amendment, Pell v. Procunier, 417 U.S. 817, 822 (1974); Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996), "[b]eing moved between cells is something that is an act inherent to incarceration and one that falls squarely within the scope of de minimis actions that do not support [the adverse action requirement of] a retaliation claim." Lee v.

14

Wilson Cty. Jail-Lebanon, No. 3:15-0007, 2016 WL 2866197, at *4 (M.D. Tenn. May 16, 2016), report and recommendation adopted, 2016 WL 3137721 (M.D. Tenn. June 6, 2016), aff'd, No. 16-5981, 2017 WL 2819220 (6th Cir. Mar. 31, 2017). Accordingly, Plaintiff's retaliation claims against Defendant Whidbee will be dismissed.

### 3. Due Process

Plaintiff alleges that he was deprived of due process for these reasons: (1) the evidence against him at his disciplinary hearing was insufficient to establish his guilt; (2) his accuser, Whidbee, was not called to testify; and (3) his appeal was heard by "a single individual rather than an impartial board." (Doc. No. 1 at 15.) He alleges that he was punished, but he does not allege the nature or extent of the punishment. (Id. at 14)

As a pretrial detainee rather than a convicted prisoner, Plaintiff has a Fourteenth Amendment right not to "be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979). But even where some process is required, an inmate is only entitled "to those minimum procedures appropriate under the circumstances and required by the Due Process Clause." Wolff v. McDonnell, 418 U.S. 539, 557 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. An inmate's due process rights in connection with a disciplinary hearing are satisfied, therefore, when he receives "notice of the charges, an opportunity to present evidence, and a written decision explaining the finding of guilt." Tate v. Quintana, No. 18-6179, 2019 WL 5866596, at *1 (6th Cir. May 22, 2019) (citing Wolff, 418 U.S. at 563–66).

Here, Plaintiff's allegations fall short of stating a plausible due process claim. He alleges that he had notice of the charges and was provided a hearing. Plaintiff disputes the sufficiency of

15

the evidence against him, but he does not allege that he was prevented from offering evidence in his defense. Moreover, as previously discussed, Plaintiff's allegations establish that he first ignored and then rebuked Whidbee's authority, seemingly obviating the need for further evidence of a disciplinary violation. Regarding Whidbee's absence from the hearing, the Supreme Court made clear in Wolff that prison personnel are not required to testify at disciplinary hearings due to inherent problems with such personnel being confronted and cross-examined by prisoners. Wolff, 418 U.S. at 567–69. And, while Plaintiff complains that no "detailed" explanation of his guilt was provided, he does not allege that he was deprived of a written explanation altogether. Finally, while Plaintiff takes issue that the appeal from this disciplinary conviction went to one person instead of a panel, he has no due process right to any appellate review of a disciplinary conviction. Roundtree v. Dunlap, No. 3:18CV1198, 2019 WL 3252912, at *6 (N.D. Ohio July 19, 2019) ("But a prisoner has no due process right to appeal a disciplinary conviction."); Chance v. Compton, 873 F. Supp. 82, 86 (W.D. Tenn. 1994) ("[A] right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff*.").

    4. State Law Claims

Plaintiff's state law negligence claims will be allowed to proceed against Defendants Jamison and Earl, who allegedly undertook to provide voting assistance to Plaintiff but did not do so in a timely fashion. See Edwards v. Snyder, 478 F.3d 827, 832 (7th Cir. 2007) ("Edwards's state-law negligence claim relates to the same set of operative facts as his Eighth Amendment claim for deliberate indifference, and therefore [may proceed]."). Otherwise, Plaintiff's negligence claims based on the inaction of other Defendants must fail, as he has not alleged any grounds to establish that these Defendants had a duty to facilitate his pursuit of election forms. Bradshaw v.

16

Daniel, 854 S.W.2d 865, 869 (Tenn. 1993) ("[A]n essential element in negligence cases" is "a duty of care owed by the defendant to the plaintiff[.]").

As to Plaintiff's claim that Defendant Whidbee defamed him by charging him with threatening behavior (Doc. No. 1 at 15–16), that charge cannot be considered defamatory, particularly in light of Plaintiff's subsequent conviction of that disciplinary offense. "[I]t is injury to one's reputation for good character with the public which is necessary for an actionable claim of defamation," Davis v. The Tennessean, 83 S.W.3d 125, 130 (Tenn. Ct. App. 2001), and no such injury was inflicted by Whidbee's mere filing of inmate disciplinary charges. The allegation that being accused of threatening behavior damaged Plaintiff's reputation with "other case managers, staff and management" who have access to his "record in the computer" (Doc. No. 1 at 13) simply fails to state a nonfrivolous claim of defamation. See Ali v. Moore, 984 S.W.2d 224, 229 (Tenn. Ct. App. 1998) (finding that libel claims based on depictions that do not subject plaintiff to "'public hatred, contempt or ridicule' and, thus, do not constitute a 'serious threat to [his] reputation'" are frivolous).

**III. Motion to Appoint Counsel**

Plaintiff has filed a motion to appoint counsel to represent him in this matter. (Doc. No. 5) An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel. Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003); Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir. 1993). Rather, the appointment of counsel is a "privilege justified only by exceptional circumstances." Lavado, 992 F.2d at 606 (citations omitted). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the district court. Id. at 604. In making the determination of whether the circumstances warrant the appointment of counsel, courts are to consider the type of case presented and the abilities of the

plaintiff to represent himself. Id. at 606 (citations omitted). Evaluation of these factors in turn "generally involves a determination of the complexity of the factual and legal issues involved." Id. (internal quotation marks and citation omitted).

Here, the factual and legal issues presented are not unusually complex, and Plaintiff has demonstrated the ability to plead his case cogently and articulately. Exceptional circumstances justifying appointment of counsel are therefore not present in this case. Plaintiff's motion will be denied, without prejudice to renewal in the future if warranted by the progress of the litigation.

**IV. Conclusion**

In light of the foregoing, Plaintiff's IFP application will be granted, his motion to appoint counsel will be denied without prejudice, and his individual-capacity claims against Defendants Jamison and Earl will be allowed to proceed for further development.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE