UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY MONTGOMERY, <br><br> Plaintiff, <br><br> v. <br><br> KENDRA WHIDBEE et al., <br><br> Defendants. | Case No. 3:19-cv-00747 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

This civil rights action arises out of pro se Plaintiff Gary Montgomery's pretrial detention in the custody of the Davidson County Sheriff's Office. Defendants Kinya Jamison and Granvisse Earl have moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 15.) Montgomery has responded in opposition (Doc. No. 26) and Earl and Jamison have replied (Doc. No. 27). For the following reasons, the Magistrate Judge will recommend that the motion to dismiss be denied as to Montgomery's claims against Jamison and granted as to Montgomery's claims against Earl.

**I.     Factual and Procedural Background[1]**

Montgomery initiated this action by filing a complaint on August 26, 2019. (Doc. No. 1.) The Court granted Montgomery's application to proceed *in forma pauperis* and screened the complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, finding that he had stated colorable claims

---

[1] The facts in this section are drawn from Montgomery's complaint (Doc. No. 1) and accepted as true for purposes of resolving the pending motion to dismiss.

under federal and state law against Jamison and Earl in their individual capacities. (Doc. No. 9.) The factual allegations underlying those claims are as follows:

Montgomery, who has been a pretrial detainee in the custody of the Davidson County Sheriff's Office since 2016, states that he has repeatedly tried to obtain absentee ballots to vote from jail officials without success. In July 2016, Montgomery asked to register for an absentee ballot and, after initially being told he would be given an application, was later told by a case manager that it was "not [her] job to obtain ballots." (Doc. No. 1, ¶ 16.) Montgomery was not able to vote in the 2016 presidential election. (*Id.*) In August 2018, Montgomery asked for help getting an absentee ballot by submitting a written request on a services sign-up sheet. (*Id.* at ¶ 18.) He received no response to that request and made "numerous complaints" about not being able to get a ballot. (*Id.* at ¶¶ 18–19.)

In September 2018, Montgomery was moved to the A2 housing pod, where Jamison became his case manager. (*Id.* at ¶ 19.) Montgomery told Jamison that he believed he had been moved because he "expressed [his] personal opinion" that jail officials were "intentionally not providing" him with absentee ballots. (*Id.* at ¶ 20.) On October 8, 2018,[2] Jamison gave Montgomery an application to register to vote and to request an absentee ballot, which was "clearly marked" at the top with a submission deadline of October 16, 2018. (*Id.*) Montgomery promptly completed the application and returned it to Jamison "in a few minutes." informing her that the application needed to be notarized. (*Id.*) Jamison assured Montgomery that she would have the document notarized by Program Director Earl, but did not return the notarized application until

---

[2] This date is recited in the complaint as "August 8, 2018." (Doc. No. 1.) When screening Montgomery's complaint, the Court presumed that, given the surrounding sequence of events, Montgomery erroneously printed "August" when he intended "October." (Doc. No. 8.) That presumption continues to apply.

four days later on October 12, 2018. (*Id.*) When Jamison returned the application to Montgomery, he placed it in the prison mail "within an hour." (*Id.*) After two weeks, Montgomery received a letter from the Election Commission stating that his application had been filed late. (*Id.* at ¶ 21.) His application was denied, and he was unable to vote in the 2018 midterm elections. (*Id.*)

Montgomery claims that Jamison and Earl violated the Equal Protection Clause of the Fourteenth Amendment and the First Amendment by denying him the right to vote and breached a common law duty of care by preventing him from getting his application for a ballot in on time. (Doc. No. 1.) Jamison and Earl moved to dismiss Montgomery's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. No. 15.) They argue that they are entitled to qualified immunity from Montgomery's § 1983 claim and that the Tennessee Governmental Tort Liability Act grants them statutory immunity from Montgomery's negligence claim. (*Id.*) Montgomery responds that (1) qualified immunity does not bar his constitutional claims because a reasonable officer in Jamison's and Earl's positions would have recognized that delaying the mailing of Montgomery's ballot application would deny him his right to vote and (2) the Tennessee Governmental Tort Liability Act does not grant immunity to public employees for negligence claims that, like Montgomery's, arise out of civil rights violations. (Doc. No. 26.) Jamison and Earl reply that a delay in furnishing and notarizing a pretrial detainee's absentee ballot application is not a "clearly established" violation of the right to vote. (Doc. No. 27.) They also argue that, if the Court finds that qualified immunity bars Montgomery's federal claims, it should either extend qualified immunity to the state claims or decline to exercise supplemental jurisdiction over them. (*Id.*)

## II. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Montgomery proceeds pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up

unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.** **Analysis**

    **A.** **Montgomery's Claims Under 42 U.S.C. § 1983**

"Section 1983 provides a civil enforcement mechanism for all inmates [and pretrial detainees] who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (second alteration in original) (quoting 42 U.S.C. § 1983). A plaintiff alleging claims under § 1983 must make two showings to survive a motion to dismiss: "one, 'a plaintiff must allege that a defendant acted under color of state law'; and two, 'a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law.'"[3] *Bright v. Gallia Cnty.*, 753 F.3d 639, 653 (6th Cir. 2014) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012)).

The qualified immunity doctrine shields government officials performing discretionary functions from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to "'balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Richko v. Wayne Cnty.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Because the qualified immunity analysis is fact-intensive and the precise factual basis for a plaintiff's claims may be hard to identify at the

---

[3]     The defendants do not contest that they were acting under color of state law during the alleged events.

pleading stage, courts typically resolve qualified immunity defenses in the context of a motion for summary judgment. *See Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 907 (6th Cir. 2019) ("[A]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (alteration in original) (quoting *Osberry v. Slusher*, 750 F. App'x 385, 391 (6th Cir. 2018))); *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) (holding "that it is 'generally inappropriate for a district court to grant a Rule 12(b)(6) motion to dismiss on the basis of qualified immunity' because "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify" (alteration in original) (citations omitted)). Overcoming the qualified immunity defense at the motion to dismiss stage is a "low bar," and courts "generally den[y] qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief." *Marvaso v. Sanchez*, 971 F.3d 599, 605–06 (6th Cir. 2020).

To overcome the defendants' claim of qualified immunity in this case, Montgomery must allege facts that "plausibly mak[e] out a claim that the defendant[s'] conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Cahoo*, 912 F.3d at 898 (alteration in original) (quoting *Courtright*, 839 F.3d at 518). This test can be broken into two inquiries. "First, taken in the light most favorable to [Montgomery], do the facts alleged show that [each] officer's conduct violated a constitutional right?" *Id.* at 897; *see also Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("We must analyze separately whether [the plaintiff] has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant."). "Second, is the right clearly established?"

6
Case 3:19-cv-00747   Document 28   Filed 03/01/21   Page 6 of 14 PageID #: 141

*Cahoo*, 912 F.3d at 897. A constitutional right is clearly established where existing precedent has placed the constitutionality of the challenged conduct "beyond debate," such that "every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### 1. Whether Montgomery Plausibly Alleged Violation of His Constitutional Rights

"Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). Voting is a "fundamental political right." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Further, "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *League of Women Voters v. Brunner*, 548 F.3d 463, 477 (6th Cir. 2008) (quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000)). "Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds*, 377 U.S. at 561–62.

Individuals who are otherwise entitled to vote do not lose that right because they are subject to pretrial detention. *O'Brien v. Skinner*, 414 U.S. 524, 529–30 (1974) (holding that the voting rights of pretrial detainees otherwise entitled to vote are protected by the Equal Protection Clause of the Fourteenth Amendment). As this Court stated in screening Montgomery's complaint, "a detainee alleging that jail officials—rather than the operation of state law—prevented him from voting . . . must allege that those officials were deliberately indifferent to the detainee's loss of his only available means of exercising his voting rights." (Doc. No. 8 (citing *Whitaker v. Gusman*,

Civil Action No. 09-3710, 2010 WL 3528618, at *3 (E.D. La. Aug. 10, 2010).) A claim of deliberate indifference requires proof that an "actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

Montgomery states a plausible claim that Jamison was deliberately indifferent to Montgomery's right to vote and prevented him from using the only means of voting available to him. Pretrial detainees "are not disabled from voting except by reason of not being able physically—in the very literal sense—to go to the polls on election day . . . ." *O'Brien*, 414 U.S. at 528. Montgomery can only vote by absentee ballot while he is detained pending trial. Submitting a completed application to get an absentee ballot is a necessary prerequisite to casting his vote.

Montgomery alleges that, after unsuccessful attempts over several years to obtain an absentee ballot from jail officials, he began to believe that those officials were intentionally preventing him from voting. On or around September 18, 2018, Montgomery expressed that belief to Jamison. Montgomery alleges that Jamison did not provide Montgomery with an application until October 8, twenty days after he requested it; knew that the application had to be submitted to the Election Commission by October 16; knew that the application had to be notarized; assured Montgomery that she would get his application notarized by Earl; and, after Montgomery gave her his completed application immediately after receiving it on October 8, did not return the notarized application until October 12, four days before the October 16 deadline.[4] Taking these allegations as true and construing them liberally in the light most favorable to Montgomery, as the Court must at this stage of the proceedings, Montgomery has plausibly alleged that Jamison disregarded the consequence of her delay and was deliberately indifferent to his right to vote by depriving him of

---

[4] The Court takes judicial notice that October 12, 2018, fell on a Friday; October 16, 2018, was a Tuesday.

his only means of voting in the 2018 election. *See Long v. Pierce*, No. 2:14-cv-00244-LJM-MJD, 2016 WL 912685, at *5 (S.D. Ind. Mar. 10, 2016) (finding allegations that jail official told pretrial detainee he would "figure out" how to get him an absentee ballot "but never did" to state a claim against the jail official, but finding claim that official "fail[ed] to provide a means for detainees to vote in an election other than an absentee ballot, which the detainee may acquire for himself" not clearly established under controlling precedent); *Post v. Du Page Cty.*, Ill., No. 91 C 447, 1993 WL 101823, at *8 (N.D. Ill. Apr. 1, 1993) (finding allegations that pretrial detainee informed social worker of his intention to vote and made multiple requests to other jail officials for access to a ballot sufficient to allege conspiracy among defendants to deprive him of right to vote).

However, Montgomery has not made sufficient allegations to support a similar claim against Earl. In fact, Montgomery does not allege any conduct by Earl at all. Montgomery states only that Jamison said she would take his application to Earl to be notarized and that Jamison returned with the notarized application four days later. Montgomery does not allege that Earl delayed notarizing the application or that Earl knew any of the circumstances Montgomery alleges surrounding the receipt and mailing of his application. Montgomery therefore does not plausibly allege that Earl acted with deliberate indifference to his right to vote. His claims against Earl should be dismissed for this reason.

### 2. Whether Montgomery's Constitutional Rights Were Clearly Established

A right is "clearly established" for purposes of qualified immunity "if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Cahoo*, 912 F.3d at 898 (alterations in original) (quoting *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015)). To determine if a right is clearly established, courts "look principally to the law of this circuit and to the Supreme Court." *Perez v. Oakland Cnty.*, 466 F.3d

416, 427 (6th Cir. 2006). "The operative inquiry is not whether a previous court faced perfectly analogous facts—it is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Cahoo*, 912 F.3d at 904 (quoting *Baynes*, 799 F.3d at 610).

The defendants argue that the right at issue here is not clearly established because there is no Supreme Court or Sixth Circuit precedent finding a constitutional violation in the "precise circumstances" of this case—that is, "provision of an absentee ballot in a less than expeditious manner but in advance of the submission deadline." (Doc. No. 16.) But that argument misreads the precedent on which it depends, *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020). Instead of requiring that a court identify "precise circumstances" in prior precedent that mirror those in the case before it, *Ashford* states that reasonable officers in a defendant's circumstances must have been able to recognize that their actions violated a constitutional right "not just in the abstract but in the *precise* situation" they faced. *Id*. That finding need only be supported by "precedent finding a [constitutional] violation in *similar* circumstances." *Id.* (emphasis added). Indeed, the Sixth Circuit has explicitly held that, under Supreme Court precedent, "neither a 'materially similar,' 'fundamentally similar,' or 'case directly on point'—let alone a factually identical case—is required, and that the specific acts or conduct at issue need not previously have been found unconstitutional for a right to be clearly established law." *Baynes v. Cleland*, 799 F.3d 600, 614 (6th Cir. 2015) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011)).

Prior Supreme Court and Sixth Circuit opinions establish that a reasonable official in Jamison's position would have recognized that actions preventing Montgomery from obtaining an absentee ballot—and, thus, from voting—were unlawful. A state violates the "fundamental" right

to vote, *Yick Wo*, 118 U.S. at 370, when it imposes "an absolute bar to voting" upon otherwise qualified pretrial detainees. *O'Brien*, 414 U.S. at 529–30; *see also Obama for Am. v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012) (applying heightened scrutiny to a voting restriction that left "burdened voters [with] few alternative means of access to the ballot"). While there is no constitutional right to vote by absentee ballot, state action that prevents a pretrial detainee from receiving an absentee ballot is a constitutional violation when that is his only available means of voting. *Compare McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 808 (1968) (finding no constitutional violation where pretrial detainees were denied absentee ballots but "there [was] nothing in the record to show that [they we]re in fact absolutely prohibited from voting by the State . . .") *with O'Brien*, 414 U.S. at 529–30 (holding that a statutory scheme that did not permit pretrial detainees to vote by absentee ballot was unconstitutional where inmates were denied alternative means of voting (citing *Goosby v. Osser*, 409 U.S. 512 (1973))).[5] A constitutional violation may also occur when the actions of public officials "deny or severely burden [a person's] fundamental right to vote," including by imposing delay. *League of Women Voters*, 548 F.3d at 478 (finding a constitutional violation where, among other things, hours of delay resulting from long lines and broken voting machines caused some voters to leave without voting and poll workers did not provide provisional ballots to eligible voters, effectively denying them the right to vote). Based on this established authority, a reasonable official in Jamison's

---

[5] *Mays v. LaRose* was decided after the events described in Montgomery's complaint occurred and does not influence whether his rights were clearly established at that time. In *Mays*, the Sixth Circuit upheld the application of absentee ballot deadlines to pretrial detainees who had an opportunity to request ballots before the deadline, but noted that "[s]trict scrutiny is the standard for cases where 'the State totally denied the electoral franchise to a particular class of residents, and there was no way in which the members of that class could have made themselves eligible to vote.'" 951 F.3d 775, 786 (6th Cir. 2020) (quoting *Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973)).

position would have been aware that Montgomery's right to vote was guaranteed and that any action effectively depriving him of that right entirely—as Montgomery alleges Jamison's failure to return his notarized application without undue delay did—was unlawful.

At this stage, the Court's task is to determine only if Montgomery "is entitled to offer evidence to support [his] claims[,]" not whether he "will ultimately prevail" by proving the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Montgomery has an uphill battle to prove that Jamison's actions constitute deliberate indifference. However, because Montgomery has plausibly alleged the violation of his clearly established constitutional rights in his complaint, Jamison is not entitled to qualified immunity against his claims based only on the pleadings.

### B. Montgomery's Negligence Claims

Jamison and Earl argue that the Tennessee Governmental Tort Liability Act (TGTLA) grants them statutory immunity from Montgomery's negligence claims. (Doc. Nos. 15, 16.) The TGTLA codifies sovereign immunity for governmental entities in Tennessee, including "any municipality, metropolitan government, [or] county." Tenn. Code Ann. § 29-20-102(3)(A). The statute provides that "governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities" except as otherwise provided in the statute. Tenn. Code Ann. § 29-20-201(a). The TGTLA also provides immunity to government employees, but only when immunity has been removed from the government entity itself. Tenn. Code Ann. § 29-20-310(b) ("No claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter . . ."). If the TGTLA has not removed a government entity's immunity for a claim, its employees remain liable for that claim in their individual capacities. *Baker v. Snyder*, No. 1:05-cv-152, 2006 WL 2645163, at *10 (E.D. Tenn. Sept. 14, 2006) (*citing Baines v. Wilson Cnty.*, 86

S.W.3d 575, 583 n.5 (Tenn. Ct. App. 2002), *abrogated on other grounds by Young v. City of LaFollette*, 479 S.W.3d 785 Tenn. 2015))).

The TGTLA removes governmental immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except* if the injury arises out of . . . civil rights" violations. Tenn. Code Ann. § 29-20-205(2) (emphasis added). This civil rights exception has been construed to include claims arising under 42 U.S.C. § 1983. *See Colson v. City of Alcoa*, 458 F. Supp. 3d 887, 937 (E.D. Tenn. 2020) ("When a plaintiff's negligence claims arise out of the same facts and circumstances as [his] civil rights claims under § 1983, they fall within the civil rights exception in the TGTLA.").

Montgomery's negligence claims are based on his allegations that Jamison and Earl assumed a duty of care when they undertook to help him obtain an absentee ballot and that they breached that duty by failing to provide that assistance in a timely manner. These allegations are based on the same facts and circumstances as Montgomery's claim that Jamison and Earl were deliberately indifferent to his voting rights under § 1983.[6] Therefore, Montgomery's negligence claim falls within the TGTLA's civil rights exception and Jamison and Earl are not immune from suit in their individual capacities under that statute. Nor, for the same reasons stated above, are they entitled to an extension of qualified immunity to these claims. However, because Montgomery has not alleged sufficient facts regarding Earl's conduct to support a finding of negligence, his claims against her under state law also should be dismissed.

---

[6] The defendants argue that Montgomery "must choose whether to pursue his claim as either an intentional civil rights violation or as one where the Individual Defendants were simply negligent." (Doc. No. 27.) While Montgomery may not be able to prove claims under § 1983 and the TGTLA on the same facts, he may plead them in the alternative.

## IV. Recommendation

Based on the foregoing considerations, the Magistrate Judge RECOMMENDS that Jamison and Earl's motion to dismiss (Doc. No. 15) be GRANTED IN PART as to Montgomery's claims against Earl and DENIED IN PART as to Montgomery's claims against Jamison.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 1st day of March, 2021.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge