UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY MONTGOMERY, | |
| Plaintiff, | Case No. 3:19-cv-00747 |
| v. | Chief Judge Waverly D. Crenshaw, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| KENDRA WHIDBEE et al., | |
| Defendants. | |

To:     The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

### REPORT AND RECOMMENDATION

This civil rights action arises out of pro se Plaintiff Gary Montgomery's pretrial detention in the custody of the Davidson County Sheriff's Office (DCSO). (Doc. No. 1.) Montgomery alleges that Defendant Kinya Jamison, a DCSO case manager, violated his constitutional rights and committed negligence by preventing him from submitting an absentee ballot application in time to vote in the November 2018 midterm elections. (*Id.*) The parties have filed cross-motions for summary judgment (Doc. Nos. 51, 60) that have been fully briefed and referred to the Magistrate Judge for report and recommendation.

For the reasons that follow, Jamison's motion for summary judgment will be granted and Montgomery's motion for summary judgment will be denied.

## I.  Factual and Procedural Background

### A.  Factual Background[1]

The events addressed by Montgomery's claims took place in the fall of 2018 when Montgomery was a pretrial detainee in the custody of the DCSO. (Doc. No. 1.) On September 7, 2018, Jamison received an email from her supervisor Granvisse Earl (Doc. No. 62) with the subject "State & Federal General Election" (Doc. No. 60-3, PageID# 276). The email directed Jamison to "[s]ee attached documents to print for inmate absentee [b]allot and voting instructions . . . for those

---

[1]      The facts in this section are drawn from Montgomery's verified complaint (Doc. No. 1), Jamison's statement of undisputed material facts (Doc. No. 60) and the parties summary judgment exhibits (Doc. Nos. 60-1–60-6, 81).

Courts may consider complaints sworn under penalty of perjury as part of the summary judgment record because such a "verified complaint . . . carries the same weight as would an affidavit[.]" *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). To verify a complaint in federal court, a plaintiff must include a statement "in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" 28 U.S.C. § 1746(2).

Montgomery filed a form complaint accompanied by a handwritten attachment. (Doc. No. 1.) At the end of the form complaint, Montgomery signed under the following statement: "I (we) certify under penalty of perjury that the foregoing complaint is true to the best of my (our) information, knowledge and belief." (*Id.* at PageID# 6.) At the end of the handwritten attachment, Montgomery wrote under his signature, "I have read the foregoing complaint and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the following is true and correct." (*Id.* at PageID# 19.)

When an affidavit is made on "knowledge and belief," "the district court has discretion to determine whether it can differentiate between knowledge and belief for each averment" and "[i]f the court can distinguish between the two . . . the court . . . must admit the parts based solely on personal knowledge while striking the parts based upon belief." *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015). *See also, e.g.*, *Sango v. Burt*, No. 1:19-CV-729, 2021 WL 1877363, at *2–3 (W.D. Mich. Apr. 13, 2021) (considering only statements that reflected affiant's personal knowledge at summary judgment when declaration was sworn under "knowledge, information and belief"), *report and recommendation adopted*, 2021 WL 1854285 (W.D. Mich. May 10, 2021). Here, the Court will exercise its discretion to consider as verified only statements made in Montgomery's complaint and attachment that reflect Montgomery's personal knowledge.

inmates that qualify for voting (registered voters) for the November 6, 2018 election." (Doc. No. 60-3, PageID# 276.) The email stated that "[a]ll applications must be sent to the Election Commission by October 16, 2018[,]" which was twenty-one days before Election Day. (*Id.*)

Attached to the email was a two-page form titled Inmate Application For Absentee Ballot By Mail.[2] (Doc. Nos. 60-3, PageID# 277; 62, PageID# 296, ¶ 1.) At the top of the form, in bold type, is a statement that the application must be "mailed to the county election commission where the voter is registered not more than ninety (90) nor less than twenty-one (21) days prior to election day." (Doc. No. 60-3, PageID# 277.)

## INMATE APPLICATION
## FOR ABSENTEE BALLOT BY MAIL

*This application must be mailed to the county election commission where the voter is registered not more than ninety (90) nor less than twenty-one (21) days prior to election day.*

(Doc. No. 60-3.)

The form requires the applicant to include criminal history information and information regarding current criminal charges. (*Id.*) It warns the applicant that a person who applies for a ballot and is not entitled to do so commits a felony offense. (*Id.*) The form must be signed under penalty of perjury and notarized. (*Id.*)

Jamison became Montgomery's DCSO case manager on or about September 18, 2018, when Montgomery was moved to the A2 housing pod. (Doc. No. 1.) At some point after Jamison

---

[2] The application does not state by whom it was created and Jamison does not provide that information in her briefing. The application contains a box for "Election Commission office use only" in which the Administrator of Elections can accept or reject the application. (Doc. No. 60-3, PageID# 278.) The form has a footer identifying it as "SS-3060 (Rev. 8/04)." (*Id.* at PageID# 277.)

became Montgomery's case manager, Montgomery told Jamison that he was moved to the A2 pod because he "expressed [his] personal opinion while making a call that people are intentionally not providing [him] with an absentee ballot so [he] can vote." (*Id.* at PageID# 11.)

The parties disagree about when Jamison became aware that Montgomery had requested an absentee ballot application, when Montgomery received the application, and when Montgomery gave the application back to Jamison.

Jamison has provided her copy of the agenda from a community meeting held in the DCSO's A-Pod on October 10, 2018. (Doc. No. 60-4.) In the section of the agenda addressing "October Updates" and "Other Imperative Information," an entry states:

> Federal and State General Election is November 6, 2018. If your [sic] interested please let me know, however these applications are for those inmates that qualify for voting (registered voters). All applications must be sent to the Election Commission by October 16, 2018.

(*Id.* at PageID# 281.)

Underneath this entry is a handwritten notation: "(Montgomery, Soloman) (Pratt)." (*Id.*) Jamison states that she was made aware at the Community Meeting that Montgomery had asked for an absentee ballot application. (Doc. No. 62.) She states that Montgomery received the application at the Community Meeting and was told that the application had to be mailed by October 16, 2018. (Doc. No. 60-1.) Montgomery disagrees, stating that he received an application from Jamison "[o]n or about" October 8, 2018.[3] (Doc. No. 1, PageID# 11.) Montgomery states that he completed the form on October 8, 2018, and gave the form to Jamison to be notarized on

---

[3] This date is recited in the complaint as "August 8, 2018." (Doc. No. 1.) When screening Montgomery's complaint, the Court presumed that, given the surrounding sequence of events, Montgomery erroneously wrote "August" when he intended to write "October." (Doc. No. 8.) No party has argued otherwise, and the Court continues to assume Montgomery intended the date to be October 8, 2018.

that day. (Doc. No. 1.) Jamison states that she received Montgomery's completed application on October 11, 2018, when Montgomery gave her the form and asked her to have it notarized. (Doc. No. 62.)

Jamison has provided her notes from the DCSO's case management system regarding interactions with Montgomery. A note entered on September 26, 2018, states that "CM Whidbee wanted to let me know if [Montgomery] requests to vote to give him the form. [Montgomery] has not requested at this time." (Doc. No. 60-2, PageID# 274.) An entry on September 28, 2018, states that Jamison "rec[eived] envelope for [Montgomery] (from CM Whidbee) if he asks to vote." (*Id.*) On October 11, 2018, Jamison noted that Montgomery "requested notary for [ ][i]nmate application for absentee ballot [by] mail. Request made to Supervisor [G. Earl] and document will be placed in her mailbox." (*Id.* at PageID# 275.) An October 12, 2018 entry states "program manager earl notarized voters absentee ballot." (*Id.*) The final provided entry, also made on October 12, 2018, states "[Montgomery] rec[eived] envelope from Elections Commission for mail (C/O stated that he requested information) – envelope was given to C/O Munos." (*Id.*)

The parties agree that Earl notarized the application, that Jamison returned the application to Montgomery on October 12, 2018, and that Montgomery put the application in the mail that day. (Doc. Nos. 1, 62.) About two weeks later, Montgomery received a letter from the Election Commission stating that his application had been rejected because it was received too late. (Doc. No. 1.)

Jamison has provided the declaration of Davidson County Election Commission Administrator Jeff Roberts and a copy of Montgomery's application as it was received and processed by the Election Commission. (Doc. Nos. 60-5, 60-6.) The application shows that it was signed by Montgomery on October 12, 2018, and notarized by Earl on the same day. (Doc. No. 60-

5

6.) Roberts states that a note made on Montgomery's application shows that it was received on October 18, 2018. (Doc. No. 60-5.)

**INMATE APPLICATION**
**FOR ABSENTEE BALLOT BY MAIL**

*This application must be mailed to the county election commission where the voter is registered not more than ninety (90) days nor less than twenty-one (21) days prior to election day.*

(1) I, ___GARY MONTGOMERY___, declare that I am presently registered to vote at
        (Print Name of Voter as Registered)

(Doc. No. 60-6.)

The application is not signed by the Administrator of Elections, but is marked on the first page: "Rejected Rec[eived] too late[.]" (*Id.* at PageID# 283.)

Montgomery provides a document with his opposition to Jamison's motion for summary judgment titled Information and Instructions for completing and mailing Inmate Applications and Absentee Ballots.[4] (Doc. Nos. 79, 81.) It is an informational document, not a ballot application, and provides information specific to the Davidson County Election Commission. (Doc. No. 81.) The document instructs that an applicant must mail "the *Inmate Application*" to the county Election Commission office where the applicant is registered "no later than twenty-one (21) days prior to the Election Day." (*Id.* at PageID# 354.) The document then states: "The deadline is **Tuesday, October 16, 2018,** to receive the completed application in the Election Commission office." (*Id.*)

---

[4]      Montgomery originally provided the 2022 version of this document. (Doc. No. 79.) In response to Jamison's reply argument that a document from 2022 was irrelevant to Montgomery's claims, Montgomery provided the 2018 version and the 2022 version of the form in a filing that the Court construes as a sur-reply. (Doc. No. 81.) It appears that the 2018 document and 2022 document are identical except for the calendar dates stating the deadline and Election Day. (*Id.*)

6

# Information and Instructions for completing and mailing Inmate Applications and Absentee Ballots

### Name and Date of Election: **State and Federal General Election on November 6, 2018**

The inmate mails the *Inmate Application* to the Election Commission Office in the County in which the inmate is a registered voter no later than twenty-one (21) days prior to the Election Day. Davidson County residents mail the application to:

Davidson County Election Commission
P.O. Box 650
Nashville, TN 37202

The deadline is **Tuesday, October 16, 2018,** to receive the completed application in the Election Commission office.

(Doc. No. 81.)

## B.     Procedural Background

Montgomery initiated this action by filing a complaint on August 16, 2019.[5] (Doc. No. 1.) The Court granted Montgomery's application to proceed *in forma pauperis* and screened the complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, finding that he had plausibly alleged that Jamison and Earl "were deliberately indifferent to [Montgomery's] loss of his only means of voting." (Doc. No. 8, PageID# 49.) The Court also found that Montgomery plausibly alleged negligence claims against Jamison and Earl, "who allegedly undertook to provide voting assistance to [Montgomery] but did not do so in a timely fashion." (*Id.* at PageID# 54.)

Jamison and Earl moved to dismiss Montgomery's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that they were entitled to qualified immunity from Montgomery's

---

[5]     Under the "prison mailbox rule[,] . . . a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). Courts applying the prison mailbox rule assume, "absent contrary evidence," that an incarcerated person handed over a pleading to prison authorities "on the date he or she signed [it]." *Brand*, 526 F.3d at 925. Montgomery signed his complaint on August 16, 2019. (Doc. No. 1.)

§ 1983 claim because they were not deliberately indifferent to Montgomery's right to vote and because the right to vote in the particular circumstances was not clearly established and entitled to statutory immunity from Montgomery's negligence claim under the Tennessee Governmental Tort Liability Act (TGTLA). (Doc. Nos. 15, 16.) The Magistrate Judge recommended that the motion to dismiss be denied as to Jamison, finding that Jamison was not entitled to qualified immunity at the motion to dismiss stage and that she was not immune from the negligence claim under the TGTLA. (Doc. No. 28.) The Magistrate Judge also recommended that the motion to dismiss be granted as to Earl. (*Id.*) Over Jamison's objections (Doc. No. 30), the Court accepted the Magistrate Judge's report and recommendation (Doc. No. 32). Jamison filed an interlocutory appeal. (Doc. No. 35.)

The Sixth Circuit affirmed the Court's denial of Jamison's motion to dismiss on qualified immunity grounds. *Montgomery v. Whidbee*, No. 21-5327, 2022 WL 1008284, at \*3 (6th Cir. Mar. 16, 2022). Construing the facts Montgomery alleged in his complaint "liberally and in his favor," the court held that, "[g]iven the twenty-day delay in giving Montgomery his requested application and four-day delay in returning the notarized application in the face of the clearly stated deadline, Montgomery plausibly alleges that Jamison was deliberately indifferent that her conduct would violate his right to vote."[6] *Id.* Accordingly, because "[a] reasonable official in [Jamison's] position would have been aware that her actions were unconstitutional . . . she is therefore not entitled to qualified immunity at this stage of the litigation." *Id.* The court remanded the case for further proceedings. *Id.*

---

[6]     This Court and the Sixth Circuit liberally construed Montgomery's complaint to allege that he had requested a ballot application on or around September 18, 2018. (Doc. No. 8.)

Montgomery moved for summary judgment on April 13, 2022, approximately one month after his case returned to this Court. (Doc. No. 51.) Montgomery supported his motion with a memorandum of law (Doc. No. 52), a declaration (Doc. No. 65), and two supplemental filings (Doc. Nos. 70, 71). Jamison opposed the motion (Doc. No. 59), and Montgomery filed a reply (Doc. No. 64).

Jamison moved for summary judgment on June 9, 2022. (Doc. No. 60.) Her motion is supported by a memorandum of law (Doc. No. 61), a statement of undisputed material facts (Doc. No. 62), and several exhibits (Doc. Nos. 60-1–60-6). Montgomery responded in opposition to Jamison's motion and statement of undisputed material facts. (Doc. No. 79.) Jamison filed a reply (Doc. No. 80), and Montgomery filed an objection to the reply that the Court construes as a sur-reply (Doc. No. 81).

## II.      Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party

meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

Where, as here, the parties have filed cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

### III. Analysis

#### A. Jamison's Motion for Summary Judgment

##### 1. Local Rule 56.01 and Jamison's Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that a motion for summary judgment "must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Local Rule 56.01(b) exists "'to prevent parties from unfairly shifting the burdens of litigation to the court[,]'" *Matthews v. Copeland*, 286 F. Supp. 3d 912, 916 (M.D. Tenn. 2017) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)), and to ensure that a party facing a motion for summary judgment has adequate notice of and an opportunity to respond to the movant's claim that certain facts are undisputed. "Each fact must be set forth in a separate, numbered paragraph . . . [and] be supported by specific citation to the record." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). The movant must insert the word "response" after each numbered paragraph and allow the nonmoving party "sufficient space to respond to the assertion that the fact is undisputed." *Id.* "The requirement that a statement of undisputed material facts in the described format must accompany any motion for summary judgment applies to *pro se* parties[,]" although pro se litigants are not required to provide a copy of the statement in an editable electronic format to the opposing party. *Id.*; *see also Matthews*, 286 F. Supp. 3d at 915 (finding that "'it is incumbent upon litigants, even those proceeding *pro se*, to follow the . . . rules of procedure,' and this includes 'local and state court rules'" (alteration in original) (quoting *Fields v. Cnty. Of Lapeer*, 238 F.3d 420 (6th Cir. 2000))). A party opposing a motion for summary judgment must respond to each fact asserted by "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for

summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts).

Jamison has filed a statement of undisputed material facts that complies with Local Rule 56.01(b) and is supported by specific record citations. (Doc. No. 62.) Montgomery has responded to Jamison's statement of undisputed material facts. (Doc. No. 79.) Montgomery's response, however, contains few record citations. (*Id.*) Further, the portions of the record Montgomery cites to dispute Jamison's stated undisputed facts generally do not demonstrate that the fact is disputed.[7]

The Court must consider the facts asserted by Jamison to which Montgomery has not adequately responded to be undisputed. M.D. Tenn. R. 56.01(f) (failure to respond). Jamison, however, retains the burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

---

[7] For example, Jamison's first asserted undisputed fact is that "[t]he deadline on the Inmate Application for Absentee Ballot by Mail states that it is a "mailing" deadline: 'This application must be *mailed to* the county election commission where the voter is registered not . . . less than twenty-one (21) days prior to election day.'" (Doc. No. 62, PageID# 60-6, ¶ 1.) In response, Montgomery cites the same document and argues that Jamison misrepresented the application because it states that "application must be mailed . . . where voter is registered not more than ninety (90) days nor less than twenty-one (21) days prior to election day." (Doc. No. 79, PageID# 337.) Although Montgomery provides a more complete quote from the document, the additional language he provides does not call Jamison's asserted fact into dispute.

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (2022). Courts must view the moving party's evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that Jamison has offered in support of her motion to determine if it satisfies her initial burden with respect to each of Montgomery's claims before considering the adequacy of Montgomery's response in opposition. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (holding that defendant "did not carry its initial burden of production" where evidence it produced in support of

motion for summary judgment "purport[ed] to negate an essential element of plaintiffs' claim—timely notice—but . . . d[id] not actually do so"). Rule 56(c)(3) provides that the Court "need consider only" materials cited by the parties in their summary judgment briefing, "but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

## 2. Montgomery's Section 1983 Claim

"Section 1983 provides a civil enforcement mechanism for all [people in custody] who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (second alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Montgomery alleges that Jamison violated the First Amendment and the Fourteenth Amendment when she was deliberately indifferent to his right to vote and prevented him from using the only means of voting available to him. (Doc. No. 1.)

Jamison does not dispute that she is a state actor for purposes of liability under § 1983, and the Court finds that Jamison acted under color of state law within the meaning of the statute during the events in question. *See Cox v. Draper*, No. 2:20-CV-00081, 2022 WL 4137281, at *5 (M.D. Tenn. Sept. 12, 2022) (finding that jail administrator and jail corrections officer acted under color of state law and were therefore persons subject to suit under § 1983) (citing *Meadows v. Putnam Cnty.*, No. 2:19-cv-00006, 2020 WL 1532311, at *3 (M.D. Tenn. Mar. 31, 2020)). The only

remaining question at summary judgment is whether there are genuine issues of material fact that Jamison deprived Montgomery of his constitutional rights.

Jamison again raises qualified immunity as an affirmative defense to Montgomery's § 1983 claim. (Doc. No. 61.) "The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). It is intended to "'balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson*, 555 U.S. at 232). Even if a plaintiff can show a genuine question of material fact as to whether a defendant violated his constitutional rights, the defendant is still entitled to qualified immunity if those rights were not clearly established at the time of violation. A constitutional right is clearly established where existing precedent has placed the constitutionality of the challenged conduct "beyond debate," such that "every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))." When a defendant invokes qualified immunity and carries his or her initial summary judgment burden, "the plaintiff bears the burden to show that qualified immunity is inappropriate." *Quigley*, 707 F.3d at 681.

### a. Violation of the Right to Vote

"Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). Voting is a "fundamental political right." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Further, "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 477 (6th Cir. 2008) (quoting *Bush v. Gore*, 531 U.S. 98, 104 (2000)). "Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds*, 377 U.S. at 561–62. People who are otherwise entitled to vote do not lose that right because they are subject to pretrial detention. *O'Brien v. Skinner*, 414 U.S. 524, 529–30 (1974) (holding that the voting rights of pretrial detainees otherwise entitled to vote are protected by the Equal Protection Clause of the Fourteenth Amendment). As the Sixth Circuit has already held in this case, "a reasonable official would have recognized that delaying the processing of a pretrial detainee's absentee ballot would unconstitutionally interfere with the detainee's right to vote. The right is thus clearly established." *Montgomery*, 2022 WL 1008284, at \*3.

The Sixth Circuit recognized on Jamison's interlocutory appeal that, to show that Jamison violated his clearly established constitutional right, Montgomery must show that "Jamison was deliberately indifferent to the fact that her conduct would violate his right to vote." *Id.* (citing *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 596 (6th Cir. 2021), *cert. denied,* 214 L. Ed. 2d 13, 143 S. Ct. 84 (2022)). "The deliberate indifference standard is an objective one and requires more than mere negligence." *Id.* A pretrial detainee plaintiff "must prove 'more than negligence

but less than subjective intent—something akin to reckless disregard.'" *Brawner*, 14 F.4th at 596 (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016)). "In other words, a plaintiff must prove that the defendant acted 'deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 606 (6th Cir. 2022) (quoting *Brawner*, 14 F.4th at 597).

Jail officials may violate a detainee's right to vote when the detainee asks for voting assistance and the officials do not provide it. *See, e.g.*, *Long v. Pierce*, No. 214-cv-00244, 2016 WL 912685, at *1 (S.D. Ind. Mar. 10, 2016) (finding allegations that jail official told pretrial detainee he would "figure out" how to get him an absentee ballot "but never did" to state a claim against the jail official); *Post v. Du Page Cnty., Ill.*, No. 91 C 447, 1993 WL 101823, at *8 (N.D. Ill. Apr. 1, 1993) (finding allegations that pretrial detainee informed social worker of his intention to vote and made multiple requests to other jail officials for a ballot sufficient to allege conspiracy among defendants to deprive him of right to vote). However, jail officials are not deliberately indifferent to a detainee's rights when they attempt to provide assistance in voting but are unsuccessful. *See, e.g.*, *Whitaker v. Gusman*, No. CIV.A. 09-3710, 2010 WL 3528618, at *3–4 (E.D. La. Aug. 10, 2010) (finding on motion to dismiss that jail officials were at most negligent when plaintiff was unable to vote using the system the jail provided because he did not receive the proper instructions or did not comply with instructions); *Lewis v. San Mateo Cnty.*, No. C 96-4168, 1996 WL 708594, at *1 (N.D. Cal. Dec. 5, 1996) (finding that jail officials were at most negligent when plaintiff requested voter registration card five days before deadline and received the card one day too late to register).

Jamison has carried her initial burden at summary judgment to show that she did not act with reckless disregard to Montgomery's right to vote. The evidence Jamison has provided shows that she reasonably understood that Montgomery's absentee ballot application had to be mailed by—not received by—October 16, 2018. Specifically, Jamison has shown that she was instructed by Earl's September 7, 2018 email that "[a]ll applications must be sent to the Election Commission by October 16, 2018" (Doc. No. 60-3, PageID# 276); that the October 10, 2018 community meeting agenda stated that "[a]ll applications must be sent to the Election Commission by October 16, 2018" (Doc. No. 60-4, PageID# 281); and that the Inmate Application For Absentee Ballot By Mail itself states that the application "must be mailed to the county election commission where the voter is registered not more than ninety (90) days nor less than twenty-one (21) days prior to election day" (Doc. No. 60-3, PageID# 277). Based on the information available at the time, a reasonable official in Jamison's position would have understood that an otherwise-qualified pretrial detainee would receive an absentee ballot and be able to vote if his absentee ballot application was mailed by October 16, 2018.[8]

---

[8] In several of his filings, Montgomery argues that, by filing an interlocutory appeal of the Court's denial of qualified immunity at the motion-to-dismiss stage, Jamison conceded all of the facts as Montgomery alleged them in his complaint. (Doc. No. 79.) Montgomery misunderstands the Sixth Circuit's statement of the correct legal standard for reviewing a denial of qualified immunity at that stage of the case: "Because such appeals 'must only raise issues of *law*,' however, defendants 'must be willing to concede the facts as alleged by the plaintiff and discuss only the legal issues raised by the case.'" *Montgomery*, 2022 WL 1008284, at *2 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999)). While the court of appeals was required to consider all of Montgomery's alleged facts as true at the motion to dismiss stage, that requirement does not continue to summary judgment proceedings, where the parties must support their positions with record evidence. Fed. R. Civ. P. 56. As this Court has already informed Montgomery, the Sixth Circuit's holding on interlocutory appeal "does not mean that [Montgomery] is entitled to summary judgment as a matter of law, nor does it preclude [Jamison] from seeking summary judgment in her own right." (Doc. No. 73.)

With this understanding, the actions Jamison took in assisting Montgomery with his ballot application do not show a reckless disregard to his right to vote. The case notes Jamison has provided show her understanding that Montgomery had not requested a ballot application from Jamison on September 26 or September 28, 2018. (Doc. No. 60-2.) Jamison states that she became aware that Montgomery had requested an absentee ballot application on October 10, 2018—the date of the community meeting where absentee ballot applications were discussed—and that Montgomery received an application that day. (Doc. No. 62.) Jamison's notes show that Montgomery asked Jamison to have his application notarized and that Jamison gave the application to Earl to be notarized on October 11, 2018. (Doc. Nos. 1, 62.) It is undisputed that Jamison returned the notarized application to Montgomery on October 12, 2018, and that Montgomery mailed the application on that day. (Doc. Nos. 1, 62.)

Jamison has thus offered evidence to show that she gave Montgomery an absentee ballot application when he requested one, delivered the application to be notarized one day later, and returned the notarized application to Montgomery one day after that, which was four days before the October 16, 2018 mail-by deadline. This evidence is sufficient to meet Jamison's initial burden at summary judgment to show that she did not act with reckless disregard to Montgomery's right to vote. The burden thus shifts to Montgomery to "designate facts showing that there is a genuine dispute for trial." *Celotex Corp.*, 477 U.S. at 324 (citation omitted): *see also Blizzard*, 698 F. 3d at 282.

Montgomery first argues that Jamison knew of his "desire and efforts to vote" long before she provided him a ballot application because he had communicated that desire to Case Manager Whidbee. (Doc. No. 79, PageID# 338.) Montgomery's complaint states that, at some point after moving to the A2 pod on September 18, 2018, he told Jamison that he was transferred because he

"expressed [his] personal opinion while making a call that people are intentionally not providing [him] with an absentee ballot so [he] can vote." (Doc. No. 1, PageID# 11.) Montgomery does not state when he had this conversation with Jamison and does not allege that he asked Jamison for an absentee ballot application in that conversation. (Doc. No. 1.) Jamison's case notes show that Whidbee told her on September 26, 2018, to give Montgomery an application "if [he] requests to vote" and that Montgomery had not requested an application on that date. (Doc. No. 60-2, PageID# 274.) Jamison's September 28, 2018 entry states that Whidbee gave her an envelope for Montgomery "if he asks to vote." (*Id.*) Although he argues throughout his filings that Jamison "wait[ed] weeks" to provide him with an application, Montgomery does not offer any record evidence to show that Whidbee told Jamison that Montgomery had requested a ballot application before October 10, 2018, or that Montgomery asked for a ballot application before that date. (Doc. No. 79, PageID# 341.)

Montgomery states in his verified complaint that he returned his completed ballot application to Jamison on October 8, 2018, instead of October 10, 2018, and that it thus took her four days to return the notarized application to him on October 12, 2018, instead of two. (Doc. No. 1.) Although there is a factual dispute between Montgomery's verified allegation and Jamison's evidence, that dispute is not material. Construing these facts in the light most favorable to Montgomery, the facts would still show that Jamison returned Montgomery's notarized application to him four days before what she understood to be the October 16, 2018 mailing deadline. A reasonable jury could not find that Jamison acted with reckless disregard to Montgomery's right to vote by doing so. *Anderson*, 477 U.S. at 248; *Brawner*, 14 F.4th at 596.

Montgomery next argues that "alleging the October 16, 2018 as a 'must be mailed by' deadline is a twisting of the plain and expressed instructions that came along with the application

. . . In the instructions it stays 'the deadline is Tuesday, October 16, 2018, to receive the completed application in the election commission office.'" (Doc. No. 79, PageID# 341.) To support this argument, Montgomery provides the 2018 and 2022 versions of the Information and Instructions for completing and mailing Inmate Applications and Absentee Ballots document. (Doc. No. 81.)

Montgomery is correct that this document states that "[t]he deadline is **Tuesday, October 16, 2018,** to <u>receive</u> the completed application in the Election Commission office" (*Id.* at PageID# 354) (emphasis added). However, the document *also* states that "[t]he inmate <u>mails</u> the *Inmate Application* to the Election Commission Office in the County in which the inmate is registered no later than twenty-one (21) days prior to the Election Day" (*Id.*) (emphasis added). The document itself is internally inconsistent, designating October 16, 2018, as both a mail-by deadline and a receive-by deadline. The record evidence shows that the Davidson County Election Commission required that a detainee's ballot application be received by October 16, 2018, and rejected Montgomery's application because it was not received by that date. (Doc. Nos. 60-5, 60-6.) The record evidence is undisputed that Montgomery mailed his application well before October 16, 2018. Rejecting Montgomery's application as late-filed may well have been in error, given that the ballot application clearly designated October 16, 2018, as a mail-by deadline and the information sheet did so as well, albeit with a different conflicting instruction.[9]

Any such error, however, was not of Jamison's making. The overwhelming record evidence shows that Jamison reasonably understood that Montgomery's absentee ballot application had to be mailed by October 16, 2018, to be accepted. Considering the multiple other instructions Jamison received that October 16, 2018, was a mail-by deadline, the conflicting

---

[9]      Montgomery's filing of the 2018 and 2022 versions of this document appears to show that this internal inconsistency has not been corrected by the entity that issues these instructions. (Doc. No. 81.)

instructions provided on the information sheet do not create a genuine issue of material fact that Jamison acted with reckless disregard to Montgomery's right to vote.[10] Based on the record evidence provided, she is entitled to qualified immunity from Montgomery's § 1983 claim at summary judgment.

### 3. Montgomery's Negligence Claim

Because the Court should summary judgment to Jamison on Montgomery's § 1983 claim, it must decide whether to exercise supplemental jurisdiction over Montgomery's remaining state-law negligence claim. Under 28 U.S.C. § 1367, a district court has discretion to decline to exercise supplemental jurisdiction over a state-law claim when it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). Typically, "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir.2006). Courts exercising their discretion to consider retaining jurisdiction of state claims should "consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951– 52 (6th Cir. 2010) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). A district court's familiarity with the facts of the case and time spent in litigation weigh in favor of retaining supplemental jurisdiction over remaining state law claims. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).

That this Court has spent over three years with the case and is familiar with the facts of the litigation weighs in favor of retaining jurisdiction. *Harper,* 392 F.3d at 211. Further, negligence and TGTLA claims are subject to a one-year statute of limitations under Tennessee law. Tenn.

---

[10]    Further, Montgomery does not state how he received the information sheet and does not argue or demonstrate that Jamison received or reviewed it.

Code Ann. §§ 28-3-104(a)(1), 29-20-305(b). Because Montgomery's asserted injury took place more than four years ago, his claim is likely to be found time-barred if this Court declines to exercise jurisdiction. (Doc. No. 1.) The court should exercise its discretion to retain jurisdiction over Montgomery's state law negligence claim.

Jamison argues that she is entitled to summary judgment on Montgomery's negligence claim because she did not have a duty of care to Montgomery, did not breach a standard of care, and was not the actual or proximate cause of Montgomery's injuries.[11] (Doc. No. 61.) Montgomery did not respond to Jamison's arguments regarding his negligence claim.

"In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). "A defendant moving for summary judgment may prevail by negating an essential element of the plaintiff's claim or by showing that the plaintiff cannot prove that element at trial." *White v. Bradley Cnty. Gov't*, 639 S.W.3d 568, 581 (Tenn. Ct. App. 2021), *appeal denied* (Oct. 13, 2021) (citing *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 80 (Tenn. 2012)).

---

[11]     Jamison also argues that summary judgment is proper because the federal qualified immunity analysis also applies to Montgomery's negligence claim. (Doc. No. 61.) However, the TGTLA governs Jamison's immunity from the state-law claim. *See Humes v. Ervin*, No. 01-2028, 2007 WL 9710163, at *3 (W.D. Tenn. Mar. 5, 2007) (finding that the TGTLA, not qualified immunity, governed immunity analysis for tort claims against county employee). This Court already found that Jamison is not immune from suit in her individual capacity under the TGTLA. (Doc. Nos. 28, 32.)

"[P]roximate causation is the 'ultimate issue' in negligence cases." *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991) (quoting *Lancaster v. Montesi*, 390 S.W.2d 217, 220 (1965)). Proximate cause exists when

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005).

Foreseeability "is the crucial factor in the proximate cause test because, if the injury that gives rise to a negligence case could not have been reasonably foreseen, there is no proximate cause and thus no liability despite the existence of negligent conduct." *King v. Anderson Cnty.*, 419 S.W.3d 232, 248 (Tenn. 2013). Foreseeability is determined "from the vantage point available to the defendant at the time that the allegedly negligent conduct occurred." *Rathnow v. Knox Cnty.*, 209 S.W.3d 629, 633 (Tenn. Ct. App. 2006) (quoting *Wingo v. Sumner Cnty. Bd. of Educ.*, No. 01A01–9411–CV–0051, 1995 WL 241327, at *3 (Tenn. Ct. App. M.S. April 26, 1995)). Courts must consider whether the particular facts involved mean that the injury alleged was "foreseeable to the specific defendant at issue." *Kim v. State*, 622 S.W.3d 753, 766 (Tenn. Ct. App. 2020). "Though questions of causation are usually reserved for the jury, these questions can be determined at the summary judgment stage when the evidence is undisputed, and the plaintiff has shown no dispute as to a material fact." *Humphrey v. Yobonta*, No. 3:19-CV-00782, 2021 WL 780731, at *5 (M.D. Tenn. Mar. 1, 2021) (citing *McClenahan*, 806 S.W.2d at 775).

Based on the record evidence at summary judgment, and for the reasons already articulated, Jamison has met her burden to show no genuine issue of fact that the rejection of Montgomery's ballot application as late-filed could not have "reasonably been foreseen or anticipated by a person

of ordinary intelligence and prudence." *Hale*, 166 S.W.3d at 718. Montgomery has not pointed to any record evidence that creates a genuine issue of material fact regarding whether proximate cause is satisfied. *Anderson*, 477 U.S. at 252. Accordingly, Jamison is also entitled to summary judgment on Montgomery's state-law negligence claim against her.

### B. Montgomery's Motion for Summary Judgment

Montgomery's motion for summary judgment does not comply with Local Rule 56.01(b)'s requirements regarding statements of undisputed material facts. M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). In Montgomery's motion for summary judgment, he includes a list of six facts. (Doc. No. 51.) None of these facts is supported "by specific citation to the record." M.D. Tenn. R. 56.01(b). Montgomery also filed a document titled "[p]laintiff's statement of undisputed facts[.]" (Doc. No. 71.) No record citation is provided to support the single fact included in that document.[12] (*Id.*)

Montgomery has not complied with this Court's Local Rules, and his motion for summary judgment may be denied for that reason. However, the Court's analysis of the Jamison's motion for summary judgment also shows that Montgomery has not provided evidence from which the Court could find that he has established no genuine issue of material fact as to any of his claims, particularly when construing the record evidence in the light most favorable to Jamison, as the Court must do when deciding Montgomery's motion. Denying Montgomery's motion for summary judgment on the merits is therefore appropriate as well.

---

[12]     In his response to Jamison's statement of undisputed material fact, Montgomery also argues that Jamison's motion for summary judgment is improper because Jamison did not properly respond to Montgomery's motion for summary judgment. (Doc. No. 79.) Montgomery argues that, because Jamison failed to dispute his stated material facts, the facts should be taken as true. (*Id.*) While Local Rule 56.01(f) requires the Court to take an asserted undisputed fact to which no adequate response has been given as true, Montgomery did not provide record citations for any of his asserted facts. Thus, Jamison was not obligated to respond under Local Rule 56.01(b).

**IV.      Recommendation**

For these reasons, the Magistrate Judge RECOMMENDS that Jamison's motion for summary judgment (Doc. No. 60) be GRANTED and that Montgomery's motion for summary judgment (Doc. No. 51) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 27th day of February, 2023.

ALISTAIR E. NEWBERN
United States Magistrate Judge